# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY A. BOYD-CHISHOLM, <br> Petitioner, | CIVIL NO. 3:CV-08-1784 |
| v. | (Judge Munley) |
| THOMAS W. CORBETT, JR., et al., <br> Respondents | |

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus (Doc. 1) in which petitioner, Gary Boyd-Chisholm ("petitioner"), challenges his Pennsylvania state conviction. He asserts that he was convicted in violation of his "double jeopardy rights under the 5th amendment, and Equal Protection Rights under the 14th Amendment." (Doc. 1, at p. 5.) Respondents concede that the petition is timely and that petitioner's double jeopardy claim has been exhausted in state courts and that review of the petition on the merits is warranted. (Doc. 13-2, at p. 5.) For the reasons that follow, the petition will be denied.

## I.  Background[1]

On or about June 15, 2004, after receiving several complaints of drug activity at 512 South 15th Street in the City of Harrisburg, the Harrisburg City Police Vice Unit, along with the assistance of a confidential informant ("CI"), set up a controlled drug buy in which the CI would purchase a controlled substance from the residence. (Doc. 13-3, at p. 50.) The CI

---

[1]The facts contained in this section are primarily extracted from the trial court's Memorandum Opinion dated December 28, 2006, and the December 7, 2007 decision of the Superior Court of Pennsylvania affirming petitioner's Judgment of Sentence. (Doc. 13-3 at pp. 4-11 and 50- 68, respectively).

entered and exited the residence with two bags of what later tested positive for crack cocaine. Based on this controlled buy, a search warrant was issued for the residence and the occupants inside the residence. The search, which was conducted on June 17, 2004, revealed cash, small plastic bags of cocaine, cocaine residue, a razor blade, and a nine-millimeter handgun and ammunition. (Doc. 13-3, at p. 52.) Petitioner and his mother were arrested and charged with the following: possession with intent to deliver in violation of 35 P.S. § 780-113(a)(30); conspiracy in violation of 18 PA.CONS. STAT.ANN. § 903(a); and unlawful possession of drug paraphernalia in violation of 35 P.S. § 780-113(a)(32). (Doc. 13-3, at p. 53.) The procedural history of the case is as follows:

> On April 20-22, 2005, a jury trial was held in this matter [in the Court of Common Pleas of Dauphin County] where the [Appellant] was tried together with his co-defendant mother, which resulted in a hung jury. [Appellant] was represented at trial by Charles Mackin, Esquire. The Commonwealth scheduled the [Appellant] for re-trail [sic], to which the defense responded by filing a Motion to Dismiss, arguing that a new trial was barred by double jeopardy. This Court rejected the [Appellant's] argument and denied the motion. On November 16-18, 2005, a new trial was held, and a jury convicted the [Appellant] on all charges. On December 22, 2005, this court sentenced the [Appellant] to an aggregate term of incarceration of not less than sixty (60) months nor more than one-hundred twenty (120) months in a state correctional institution. . . .

(Doc. 13-3, at p. 53, citing Trial Court opinion at pp. 1-4). In his post-sentence motion, he argued that his "constitutional safeguard against double jeopardy was violated when this court denied the defendant's motion to dismiss his charges, after it declared a mistrial during the first trial. (Doc. 13-3, at p. 12.) The trial court considered the argument and arrived at the following conclusion:

2

> "As a general rule, a mistrial because of a jury's inability to reach a verdict does not implicate the principles of double jeopardy, and retrial is not prohibited." Commonwealth v. McCord, 700 A.2d 938, 946 (Pa. Super. 1977)(citations omitted). Retrial is barred only if, "the jury made findings on one or more other charges which must be interpreted as an acquittal of the events for which the defendant is to be retried." Id. (quoting Commonwealth v. Harris, 582 A.2d 1319, 1322 (1990)).
>
> In the instant case, the jury did not make any findings in the first trial. Rather, after approximately four hours of deliberation, the jury foreman informed this court that the jury was deadlocked and would not be able to reach a verdict due to one juror who did not see eye to eye with the rest of the jury, and was not going to change their opinion. This court went on to explain what declaring a hung jury would mean as far as putting a drain on the court system, and after a further inquiry into whether the foreman felt that the jury would be able to reach a verdict, the foreman responded "no." This court then appropriately declared a mistrial, and because there were not finding of fact or verdicts reached with respect to any of the charges, the safeguard against double jeopardy is not invoked.

(Doc. 13-3, at pp. 12-13).

On direct appeal, petitioner argued that the trial court failed to justify the manifest necessity required to order a new trial, thereby barring retrial on the grounds of double jeopardy. (Id. citing Appellant's Brief at p. 4.)

The record of the declaration of the mistrial shows as follows:

> The trial in this matter began on April 20, 2005. The notes of testimony show that at 12:56 p.m., on Friday, April 22, 2005, the jury sent a note to the court indicating it was deadlocked. The trial court and the parties inform us that the jury deliberated for approximately four hours before sending the note. This would indicate that the parties closed to the jury on April 21, 2005 - indicating the evidence portion of the trial lasted about two days. A review of the notes of testimony reveals the matter to have been a relatively straightforward drug case.
>
> At 1:06 p.m., on April 22, the jury was brought to the courtroom and was addressed by the trial judge.

3

The Court: Ladies and gentlemen, good afternoon. We received a note from your foreperson, [name], that indicates, well, Judge Lewis, we are at a point where we absolutely cannot agree on any of the five counts for either of the two defendants, signed by [foreperson].

Ladies and gentlemen, I guess I need to inquire whether you, the jury, are hopelessly deadlocked, whether there is no possibility that, with further deliberations, you will reach a unanimous verdict on at least some of these charges:
[Foreperson]?

Foreperson: That is true

The Court: You're hopelessly deadlocked?

Foreperson: Yes.

The Court: Do you think further deliberations would be fruitful?

Foreperson: No. There is one person that has reservations. And we have asked, and they said there is no way they're going to change.

The Court: Very well. And I need you to understand, ladies and gentlemen, that if you, a jury, cannot reach a verdict, the I would have to declare a mistrial.

The nickname for that is hung jury which means the case gets tried all over again in front of a brand new jury at a later date. It doesn't disappear from the radar screen.

That's just a drain on everyone's time. And, quite frankly, it's a drain on you in the sense that you're paying for it, so it's a drain on your tax dollars as well.

But with that in mind, is that still the feeling of the jury; that any further attempts at deliberations would be fruitless?

Foreperson: Yes.

> The Court: Very well. All right, ladies and gentlemen. I will
> declare a mistrial in this case, and I'll talk to the attorneys after you
> leave about setting a future trial date.

(Doc. 13-3 at pp. 61-63, citing N.T. Trial, 4/22/05 at 2-3; see also Doc. 13-3, Trial Notes of Testimony ("N.T. Trial"), at pp. 89-95.)

The Superior Court of Pennsylvania addressed the claim in the December 7, 2007 decision in the following manner:

> Finally, we address Appellant's claim that the trial court erred in permitting a retrial after a mistrial was declared without a declaration of manifest necessity. Where a jury does not agree on a verdict, a mistrial is declared and the jury is then properly dismissed. Commonwealth v. Hoover, 460 A.2d 814 (Pa. Super. 1983). Upon such an occurrence, "manifest necessity" is established. Id.; See also, Commonwealth v. Peters, 473 Pa. 72, 373 A.2d 1055 (1977). Double jeopardy is implicated only when a jury is dismissed without a showing of manifest necessity. Id. The court has specifically stated in this regard:
>
>> As a general rule, mistrial because of a jury's inability to reach a verdict *does not implicate the principles of double jeopardy, and retrial is not prohibited.* ... Retrial is barred where "the jury made findings on one or more other charges which must be interpreted as an acquittal of the offense for which the defendant is to be retired." (Emphasis Added).
>
> Commonwealth v. McCord, 700 A.3d 938 (Pa. Super. 1997)(quoting Commonwealth v. Harris, 582 A.2d 1319 (Pa. Super. 1990) (Citations Omitted).
>
> In the instant case, there were not findings of fact made by the jury in the first trial. After four hours of deliberation, the jury represented to the trial court that it was deadlocked because one juror did not agree with the rest of the jury, and that juror was not going to change his or her opinion. After the court explained to the jurors that a hung jury would exhaust valuable court time, the foreman informed the court that it was still clear that the jury could not reach a unanimous verdict. Consequently, the trial court then declared a mistrial, without making any findings of fact and without reaching any verdicts. Thus, double jeopardy was not implicated, and the retrial was entirely appropriate due to the fact that the first jury

5

deadlocked. This constituted "manifest necessity." See Hoover and Peter, *supra*. Thus, this assignment of error similarly lacks merit.

(Doc. 13-3, at pp. 58-59.)

One judge on the appeal panel filed a dissenting opinion finding that "[b]ecause the law requires any doubt as to the propriety of the mistrial to be resolved in favor of the defendant, I must conclude that based on the record before me, the trial court declared a mistrial prematurely and improperly. Thus, I do not believe there has been a showing of manifest necessity and the retrial of Boyd-Chisolm would be constitutionally infirm." (Doc. 13-3, at pp. 60-68.)

On January 7, 2008, he filed a petition for allowance of appeal. (Doc. 13-3, at pp. 70-85.) The petition was denied on May 8, 2008. (Doc. 13-3, at p. 87.)

He filed the present petition raising the double jeopardy claim and contending that his equal protection rights were violated because the facts cited in the majority opinion of the superior court decision do not support the opinion. (Doc. 1, at p. 8-9.)

II. Discussion

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United

6

States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8; see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

Once a court is satisfied that a merits review of a claim is warranted, as is the case here, section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits shall not be granted unless the decision is contrary to, or involves an unreasonable application of, clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. 2254(d). AEDPA thus limits a federal court's authority to grant habeas relief when a state court has previously considered and rejected the federal claim on the merits.

A. Double Jeopardy

Petitioner first argues that the superior court's majority opinion "on the mistrial-double jeopardy issues" resulted in a decision that was contrary to federal law. (Doc. 1, at p. 8.) To establish that the decision was contrary to federal law, "it is not sufficient for the petitioner to show merely that his interpretation of supreme court precedent is more plausible than the state courts; rather, the petitioner must demonstrate that precedent *requires* the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999) (emphasis in original)

"[I]t has long been held that the declaration of a mistrial *sua sponte* by a trial court does not automatically bar a future trial for the same offense." Crawford v. Fenton, 646 F.2d

7

810, 816 (3d Cir. 1981). Whether retrial is permitted in accordance with the Double Jeopardy Clause depends on whether the first trial has ended with a properly declared mistrial. United States v. Rivera, 384 F.3d 49, 54 (3d Cir. 2004). The Double Jeopardy Clause permits retrial following a mistrial when, "taking all the circumstances into consideration, there is a manifest necessity for the [mistrial]." United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824). There is no set standard for evaluating the existence of manifest necessity in a mistrial. Arizona v. Washington, 434 U.S. 497, 506 (1978). Each case turns on the particular facts, and those facts should support a finding of manifest necessity, regardless of whether the trial judge made an explicit finding of manifest necessity. Green v. Court of Common Pleas, No. 08-1749, 2008 WL 2036828, *7 (E.D.Pa. May 9, 2008) (citation omitted.).

In its analysis of the double jeopardy claim, the Superior Court of Pennsylvania utilized the following standard of review:

> Where a jury does not agree on a verdict, a mistrial is declared and the jury is then properly dismissed. Commonwealth v. Hoover, 460 A.2d 814 (Pa. Super. 1983). Upon such an occurrence, "manifest necessity" is established. Id.; See also, Commonwealth v. Peters, 473 Pa. 72, 373 A.2d 1055 (1977). Double jeopardy is implicated only when a jury is dismissed without a showing of manifest necessity. Id. The court has specifically stated in this regard:
>
>> As a general rule, mistrial because of a jury's inability to reach a verdict *does not implicate the principles of double jeopardy, and retrial is not prohibited.* . . . Retrial is barred where "the jury made findings on one or more other charges which must be interpreted as an acquittal of the offense for which the defendant is to be retired." (Emphasis Added).

8

> Commonwealth v. McCord, 700 A.3d 938 (Pa. Super. 1997)(quoting Commonwealth v. Harris, 582 A.2d 1319 (Pa. Super. 1990) (Citations Omitted).

(Doc. 13-3, at pp. 58-59.) This analysis is clearly in accord with the federal standard of review. Petitioner has failed to demonstrate that supreme court precedent requires the contrary outcome

Petitioner also contends that the superior court's majority opinion resulted in a decision that unreasonably applied the federal standard of review. " 'Under the 'unreasonable application' clause [of § 2254(d)], a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.' Jermyn v. Horn, 266 F.3d 257, 281-82 (3d Cir.2001) (quoting Williams v. Taylor, 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). In determining whether the state court unreasonably applied Supreme Court precedent, the question is whether the state court's application of federal law was objectively unreasonable, not whether the application was, in the judgment of the federal habeas court, erroneous or incorrect." Siehl v. Grace, 561 F.3d 189, 195 (3d Cir. 2009) (citations omitted).

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with "clear and convincing evidence" of the state court's error. Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to

factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions) Matteo v. Superintendent, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

As noted above, the Double Jeopardy Clause permits retrial following a mistrial when, taking all the circumstances into consideration, there is a manifest necessity to declare a mistrial. The following extreme examples were set forth in the Arizona case:

> At one extreme are cases in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence. . . . "The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where 'bad-faith conduct by judge or prosecutor' . . . threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant."

> At the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial. The argument that a jury's inability to agree establishes reasonable doubt as to the defendant's guilt, and therefore requires acquittal, has been uniformly rejected in this country. Instead, without exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws.

> Moreover, in this situation there are especially compelling reasons for allowing

the trial judge to exercise broad discretion in deciding whether or not "manifest necessity" justifies a discharge of the jury. On the one hand, if he discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his "valued right to have his trial completed by a particular tribunal." But if he fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors. If retrial of the defendant were barred whenever an appellate court views the "necessity" for a mistrial differently from the trial judge, there would be a danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock. Such a rule would frustrate the public interest in just judgments. The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court.

434 U.S. at 507-510 (citations and footnotes omitted).

In the matter *sub judice*, according to the record, the jury deliberated for approximately four hours before sending a note to the trial judge, signed by the foreperson, indicating that "we are at a point where we absolutely cannot agree on any of the five counts for either of the two defendants." (Doc. 13-3 at pp. 61-63, citing N.T. Trial, 4/22/05 at 2-3; see also Doc. 13-3, Trial Notes of Testimony ("N.T. Trial"), at pp. 89-95.) The trial judge inquired whether the jury was "hopelessly deadlocked" such that "there is no possibility that, with further deliberations, you will reach a unanimous verdict on at least some of these charges" and the foreperson confirmed that the jury was, indeed, hopelessly deadlocked. In response to the court's question of whether further deliberations would be fruitful, the foreperson responded: "No. There is one person that has reservations. And we have asked, and they said there is no way they're going to change." Id. After explaining the consequences of declaring a mistrial, specifically, that the case gets "tried all over again in

11

front of a brand new jury on a later date," the court again inquired whether it was "still the feeling of the jury; that any further attempts at deliberations would be fruitless," and the foreperson responded "yes." Id. A mistrial was then declared. Id. These state court findings of fact are presumed to be correct as petitioner has failed to rebut them with clear and convincing evidence. Based on the foregoing, it is clear that the state court's application of federal law was objectively reasonable.[2]

Lastly, petitioner contends that the decision resulted in a determination that was unreasonable in light of the facts presented in the state court proceedings. Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp 2d at 296; see also Williams, 529 U.S. at 408-09. There is clearly evidentiary support in the record to support the state court's determination

---

[2] With respect to petitioner's contention that the state court decisions relied upon by the majority actually support his position, rather than the conclusion reached by the majority, this argument is irrelevant because it does not bear on whether the application of federal law was objectively unreasonable.

12

that a mistrial was warranted and, given the facts, the declaration of a mistrial is entitled to great deference. No evidence has been offered that would warrant overturning the state court's factual determination. Petitioner is not entitled to relief on this ground.

B. Equal Protection

Petitioner also raises a Fourteenth Amendment claim. The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The pertinent text of the Fourteenth Amendment provides as follows.

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. In order to state an equal protection claim, one must "prove the existence of purposeful discrimination." Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 151 (3d Cir. 2005) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)). Stated alternatively, it must be demonstrated that he or she "received different treatment from that received by other individuals similarly situated." Id.

Petitioner claims that the majority opinion is unsupported by the authorities that are cited in the opinion and that the dissenting opinion controls. (Doc. 1, at 9.) Clearly, this is insufficient to establish an equal protection claim and, as is evident from the Double Jeopardy Clause discussion, *supra*, petitioner's claim that the majority opinion is

13

unsupported by the authorities cited therein is without merit. Petitioner fails to establish that the state court decision is contrary to, or involves an unreasonable application of, clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. 2254(d). He will be denied relief on this claim.

### III. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). There is no basis for the issuance of a COA.

## IV. Conclusion

In accordance with the foregoing, the petition for writ of habeas corpus will be denied. An appropriate order follows.

BY THE COURT:

s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court

Dated: January 15, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GARY A. BOYD-CHISHOLM, : CIVIL NO. 3:CV-08-1784
    Petitioner, :
     : (Judge Munley)
v. :
     :
THOMAS W. CORBETT, JR., et al., :
    Respondents :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

AND NOW, to wit, this 15th day of January 2010, upon consideration of the petition for writ of habeas corpus (Doc. 1), and for the reasons set forth in the foregoing memorandum, it is hereby ORDERED that:

1. The petition for writ of habeas corpus is DENIED based upon petitioner's failure to demonstrate that the applicable state court decisions were either contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

2. The Clerk of Court is directed to CLOSE this case.

3. There is no basis for the issuance of a certificate of appealability. See 28 U.S.C. § 2253(c).

BY THE COURT:

s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court